**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**TRACEY JAMES**                                                                                  **PLAINTIFF**

**V.**                                                        **CAUSE NO. 3:18-CV-678-CWR-FKB**

**ANTARCTIC MECHANICAL SERVICES, INC.,** *et al.*                      **DEFENDANTS**

**ORDER**

Before the Court is Defendants Antarctic Mechanical Services, Inc. (AMS) and Phillip Bertellotti's *Daubert Motion to Exclude or Limit Certain Opinions of Plaintiff's Expert, Dr. Dinesh Goel*. For the following reasons, the motion is denied.

**I.**     **Background**

On September 18, 2015, Bertellotti crashed his truck into the back of Tracey James' car as she was stopped at the intersection of Briarwood Drive and Interstate 55 Frontage Road in Jackson, Mississippi. At the time, Bertellotti was an AMS employee and driving a truck that AMS provided him. Bertellotti has admitted to simple negligence in causing the crash. AMS denies liability.

James claims she sustained physical and mental injuries due to the accident, including:

- Enlargement of the L4-5-disc protrusion, compressing the left L4 and L5 nerve roots;
- Enlarging L5-S2 left annulus tear;
- Cervical and lower back pain;
- Neck pain;
- Shoulder numbness and tingling of bilateral upper extremities;
- Throbbing, aching and shooting pain across lower back that radiates to the hips and down both feet and legs;
- Major depression;
- Headaches;
- Nightmares; and
- Hypertension.

James began visiting Dr. Dinesh Goel for treatment in October 2015, and that treatment continues at Goel's Medical Clinic of Mississippi.

James has designated Dr. Goel as a non-retained expert witness. According to James, Dr. Goel may be called to testify about the injuries discussed above, his opinion on what caused them, her "future disabilities and limitations" because of her injuries, and necessary future medical treatment. James has also designated Dr. Howard Katz and Dr. Mark Webb as expert witnesses to testify about James' injuries in the fields of physical medicine and psychiatry, respectively.

Defendants now seek to exclude Dr. Goel's testimony. They argue that Dr. Goel is not qualified to testify as to James' alleged spinal injuries and that his methods in reaching his opinions are unreliable. James opposes the motion.

**II.     Legal Standards**

"State law governs the substance of this case, but 'the Federal Rules of Evidence control the admission of expert testimony.'" *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) (citation omitted).[1] The admissibility of expert testimony is governed by *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), and the post-*Daubert* amendments to Federal Rule of Evidence 702. *See Guy v. Crown Equip. Corp.,* 394 F.3d 320, 325 (5th Cir.2004). That Rule now states the following:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

---

[1] The parties' briefing of admissibility of expert testimony under Mississippi law and the law of other states is therefore not relevant.

Fed. R. Evid. 702.

The purpose of Rule 702 is to guide the district court's gatekeeping function. *See Guy*, 394 F.3d at 325. Before allowing a witness to testify as an expert, a court "must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.'" *Wilson v. Woods,* 163 F.3d 935, 937 (5th Cir. 1999) (quoting Fed. R. Evid. 702).

A court's gatekeeping function also involves ensuring that "the expert uses reliable methods to reach his opinions," and that those opinions are "relevant to the facts of the case." *Guy,* 394 F.3d at 325. "Reliability is determined by assessing whether the reasoning or methodology underlying the testimony is scientifically valid. Relevance depends upon whether that reasoning or methodology properly can be applied to the facts in issue." *Knight v. Kirby Inland Marine Inc.,* 482 F.3d 347, 352 (5th Cir. 2007) (quotation marks, citations, and brackets omitted); *see United States v. Fields,* 483 F.3d 313, 342 (5th Cir. 2007). The party offering the expert bears the burden of establishing reliability by a preponderance of the evidence. *Moore v. Ashland Chem. Inc.,* 151 F.3d 269, 276 (5th Cir. 1998) (en banc).

In *Daubert,* the Supreme Court described several non-exclusive factors that trial judges should consider in gauging reliability, including (1) whether the proposed technique or theory can be or has been tested, (2) whether it has been subjected to peer review and publication, (3) whether its error rate is acceptable, (4) whether the theory is generally accepted in the scientific community, and (5) whether there are standards controlling the technique. *See Guy,* 394 F.3d at 325; *Knight,* 482 F.3d at 351. It later instructed that "the reliability analysis must remain flexible: not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy,* 394 F.3d at 325 (citation omitted); *see Hathaway v. Bazany,* 507 F.3d 312, 318 (5th Cir.2007).

The *Daubert* analysis applies to the process in which an expert reaches his conclusions, not to the merits of the conclusions themselves. *Guy,* 394 F.3d at 325. The merits remain subject to attack at trial under traditional principles of "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert,* 509 U.S. at 596. "[I]n determining the admissibility of expert testimony, the district court should approach its task with proper deference to the jury's role as the arbiter of disputes between conflicting opinions." *United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cnty., State of Miss.,* 80 F.3d 1074, 1077 (5th Cir. 1996) (quotation marks and citation omitted).

The Fifth Circuit has quoted with approval the Seventh Circuit's observation that "[u]nder the regime of *Daubert* a district judge asked to admit scientific evidence must determine whether the evidence is genuinely scientific, as distinct from being unscientific speculation offered by a genuine scientist." *Moore,* 151 F.3d at 278 (quotation marks and citation omitted). The extrapolation or "leap[] from an accepted scientific premise to an unsupported one . . . must be reasonable and scientifically valid." *Id.* at 279 (citations omitted).

### III. Discussion

Dr. Goel graduated with a medical doctorate from the King George Medical College in Lucknow, Uttar Pradesh, India, in 1967. He completed an internship at Salem Hospital in Salem, Massachusetts from 1971 to 1972, where he rotated across different medical specialties, including orthopedics and neurology. He also completed two residencies in general surgery, the first from 1972 to 1973 at Henry Ford Hospital in Detroit, Michigan, and the second from 1973 to 1976 at St. Vincent Hospital in Worchester, Massachusetts. Dr. Goel was certified by the American Board of Surgery in 1978 and recertified in 1998. His certification continued until 2010. Dr. Goel exclusively practices family medicine after quitting his surgery practice more than 20 years ago.

James designated Dr. Goel to testify regarding her injuries, their cause, the treatment he provided, future disabilities and limitations James will face, and future medical treatment she will need.

### A. The Designation

"Rule 26 requires parties to disclose the identity of any person who will provide expert testimony at trial," including treating physicians. *Barnett v. Deere & Co.*, No. 2:15-CV-2-KS-MTP, 2016 WL 4735312, at *1 (S.D. Miss. Sept. 11, 2016) (citing Fed. R. Civ. P. 26(a)(2)(A) and *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 882–83 (5th Cir. 2004)).

Although retained experts are required to provide an expert report, per Rule 26, the undersigned agrees with Judge Starrett and other district courts "that a treating physician may testify as a non-retained expert witness – and therefore need not provide an expert report." *Id.* (citing *Kim v. Time Ins. Co.*, 267 F.R.D. 499, 502 (S.D. Tex. 2008) (collecting cases) and Fed. R. Civ. P. 26(a)(2)(B)).

When a non-retained expert treating physician does not "provide an expert report, his testimony must remain 'confined to facts disclosed during care and treatment of the patient,' including his diagnosis, the causation of a plaintiff's injuries, and the plaintiff's prognosis, 'as long as the doctor formed those opinions based on [his] personal knowledge and observations obtained during the course of care and treatment.'" *Id.*

> "Conversely, where a treating physician has prepared his opinions in anticipation of litigation or relies on sources other than those utilized in treatment, courts have found that the treating physician acts more like a retained expert and must comply with Rule 26(a)(2)(B)."

*Id.*

Dr. Goel has treated James since the accident. The evidentiary basis for his treatment that he acknowledged in his deposition, James' expert designations, and the parties' submissions (e.g.,

5

James' MRI reports) were created in the context of that treatment. James also designated Dr. Goel as a non-retained expert. *See* Docket No. 143-1. Accordingly, Dr. Goel is not required to provide an expert report, however, his testimony is limited to the "facts disclosed during care and treatment of" James.

### B. Dr. Goel's Qualifications

Defendants concede that Dr. Goel is qualified to testify about his treatment as a family practitioner, but they argue that he is not qualified as an expert to testify regarding spinal injuries or provide expert testimony within the fields of neurosurgery, neurology, orthopedics, physical medicine or psychiatry/psychology because he is not a specialist in those areas of medicine.

The Court again agrees with Judge Starrett. The "exclusion of general categories of testimony is not appropriate." *Clark v. Lard Oil Co., Inc.*, No. 2:18-CV-109-KS-MTP, 2019 WL 4305744, at *5 (S.D. Miss. Sept. 11, 2019). Moreover, "[a] court should be careful not to make expert qualification decisions a 'battle of labels' where a party is permitted to 'label the needed expertise narrowly and the offered expert's field broadly.'" *Crear v. Horn*, No. 1:12-CV-8-LG-JMR, 2013 WL 11609928, at *2 (S.D. Miss. Jan. 10, 2013) (citing *Roman v. W. Mfg., Inc.*, 691 F.3d 686, 693 (5th Cir. 2012)). The fact that a designated expert physician lacks a formal specialization in an area of medicine does not in and of itself disqualify the expert under Rule 702.

"Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Huss*, 571 F.3d at 452. Our situation is similar to the one the Fifth Circuit considered in *Huss*. The expert was a board-certified internist who was designated to testify regarding whether a drug caused a patient to develop cardiomyopathy. *Id.* at 453. The Fifth Circuit found the district court abused its discretion when it excluded the expert's testimony because he lacked board-certification in either cardiology or toxicology. *Id.* at 455. The Fifth Circuit noted that the witness's "education and knowledge allowed him to form a reliable opinion,"

citing that he had practiced medicine for 15 years, had treated patients with heart conditions, and was familiar with cardiomyopathy. *Id.* at 454–55.

Here, Dr. Goel has practiced medicine for over 43 years, testified that he has seen "hundreds of patients" like James, and is familiar with her injuries. Accordingly, the Court finds that Dr. Goel is qualified to testify to the matters outlined in James' expert designation.

C. **Reliability**

Defendants then argue that Dr. Goel's methods for diagnosing James' spinal injuries are unreliable because he (1) relied on the reports of other doctors and never examined James' MRI films himself, and (2) conducted an "insufficient and undocumented" examination of James in making his diagnoses.

Defendants' first argument is unavailing. "[Dr. Goel's] reliance on other doctors' medical records . . . are the type of evidence that medical doctors 'reasonably rely on . . . in forming an opinion on the subject.'" *Henderson v. Goodyear Dunlop Tires N. Am., Ltd.*, No. 3:11-CV-295-WKW, 2013 WL 5729377, at *5 (M.D. Ala. Oct. 22, 2013) (citing Fed. R. Evid. 703 advisory committee notes). "The advisory committee notes to Rule 703 specifically explain that a physician may rely on a wide range of sources in forming medical opinions, including facts that the doctor learns 'other than by his own perception.'" *Id.*

The second argument also fails to persuade. Dr. Goel testified that he tested James' joints, muscles, and range of motion, as well as checked James for spasms. Dr. Goel also confirmed that he "palpate[d] her cervical and lumbar spine." During his deposition, Dr. Goel repeatedly acknowledged that he failed to reflect these tests in his notes. Defendants argue that this renders Dr. Goel's methods, and therefore testimony, unreliable. They observe that Dr. Katz, another of James' expert witnesses, completed significantly more tests, including at least one of which Dr. Goel also conducted (i.e., palpation of the lumbar and cervical spine).

Defendants are free to argue before the jury that an alleged lack of documentation in the chart renders Dr. Goel's work unsound or his opinions less than credible. They fail, however, to identify how Dr. Goel's method of testing James is unreliable or irrelevant "to the facts of the case." *Guy,* 394 F.3d at 325. The fact that Dr. Katz conducted similar tests on James supports that Dr. Goel's testing method is "reasonable and scientifically valid" rather than "unscientific speculation." *Moore,* 151 F.3d at 278 (citation omitted); *see also Guy,* 394 F.3d at 325.

All in all, Defendants' arguments for exclusion of Dr. Goel go to the "weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *14.38 Acres of Land*, 80 F.3d at 1077.

**IV.  Conclusion**

Defendants' motion is denied.

**SO ORDERED**, this the 23rd day of March, 2020.

s/ Carlton W. Reeves<br>UNITED STATES DISTRICT JUDGE