IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**TRACEY JAMES**                                                                             **PLAINTIFF**

**V.**                                                                 **CAUSE NO. 3:18-CV-678**

**ANTARCTIC MECHANICAL**                                        **DEFENDANTS**
**SERVICES, INC., et al.**

## ORDER

Before the Court is defendants Antarctic Mechanical Services, Inc. (AMS) and Phillip Bertellotti's Motion for Clarification and Reconsideration of Order Dated August 26, 2020. Docket No. 277. For the following reasons, defendants' motion is denied.

**I.    Factual and Procedural History**

This case arises out of a car accident in which plaintiff Tracey James was rear-ended by defendant Phillip Bertellotti. Bertellotti was driving a company truck belonging to his employer, AMS. At the time of the accident, Bertellotti allegedly was intoxicated. He has admitted simple negligence in causing the crash.

On December 27, 2019, AMS filed a motion *in limine* asking this Court to exclude evidence on 29 topics, including "References to Insurance" and "References or Arguments to the Jury Regarding Punitive Damages During Plaintiff's Case in Chief," and requesting a "Phased Trial." Docket No. 226. On August 24, 2020, this Court held a hearing on the motion. *See* Transcript of Hearing, Docket No. 275. An order summarizing the rulings on each topic followed. Docket No. 270.

## II.     Legal Standard

### A.     Federal Procedural Law

Rule 54(b) of the Federal Rules of Civil Procedure provides that any order or decision "that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time" before the entry of final judgment. Revision is within the discretion of the court. *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 337 (5th Cir. 2017). Exercising such discretion is "inherent," "flexible," and appropriate "as justice requires." *Id.* Unlike motions to amend or alter final judgments, the authority to revise interlocutory decisions does not require new evidence or an intervening change in or clarification of substantive law. *Id.* at 336.

### B.     State Substantive Law

Because this case is proceeding in diversity, the applicable substantive law is that of the forum state, Mississippi. *Capital City Ins. Co. v. Hurst*, 632 F.3d 898, 902 (5th Cir. 2011). State law is determined by looking to the decisions of the state's highest court. *St. Paul Fire & Marine Ins. Co. v. Convalescent Servs., Inc.*, 193 F.3d 340, 342 (5th Cir. 1999) (citation omitted). "If no such holdings exist, [the Court] predicts how that tribunal would rule." *Centennial Ins. Co. v. Ryder Truck Rental, Inc.*, 149 F.3d 378, 382 (5th Cir. 1998). The prediction is based on:

> (1) decisions of the Mississippi Supreme Court in analogous cases, (2) the rationales and analyses underlying Mississippi Supreme Court decisions on related issues, (3) dicta by the Mississippi Supreme Court, (4) lower state court decisions, (5) the general rule on the question, (6) the rulings of courts of other states to which Mississippi courts look when formulating substantive law and (7) other available sources, such as treatises and legal commentaries.

*Id.*

"Absent evidence to the contrary, [the federal court] presumes that the Mississippi courts would adopt the prevailing rule if called upon to do so." *Id.* The Court is "emphatically not permitted

to do merely what [it] think[s] best; [the federal court] must do that which [it] think[s] the Mississippi Supreme Court would deem best." *Id.*

### III.  Discussion

Defendants ask the Court to clarify and/or reconsider two rulings. First, they request the Court to clarify its ruling as to Topic I, "references to insurance," which was granted in part and denied in part. To the extent that the Court's ruling permits references to insurance during the punitive damages phase of trial, defendants allege that the Court erred. Second, defendants seek reconsideration on Topic XII, "phased trial and to exclude any references or arguments to the jury regarding punitive damages during plaintiff's case in chief," which was granted in part and denied in part as to the issue of alcohol consumption.

The Court will consider each of defendants' claims in turn.

#### A.  Request for a Phased Trial

Defendants previously moved the court to employ a "phased trial and to exclude any references or arguments to the jury regarding punitive damages during plaintiff's case in chief" as a single topic. Docket No. 227. For the sake of clarity, today's order separates the request into two.

The motion for a phased trial is consistent with Federal Rule of Civil Procedure 42(b) and the provisions of Mississippi's punitive damages statute. Specifically, Mississippi Code § 11-1-65 mandates the bifurcation of liability and compensatory damages, from that of punitive damages. *See Bradfield v. Schwartz*, 936 So.2d 931 (Miss. 2006). Federal Rule 42(b) authorizes the same. This Court agrees that a phased trial is appropriate and thus, this motion is granted.

#### B.  Request to Exclude Reference to Alcohol Consumption During Liability/Compensatory Phase

In defendants' motion *in limine*, they asked the Court to exclude any references or arguments to the jury regarding punitive damages during plaintiff's case in chief. Docket No. 227

3

at 13-14. Specifically, they cited concerns over messaging that the defendants should be "punished," or the jury be encouraged to "send a message with verdict(s)," and "keep[] the roads safer by entering a verdict against" defendants. *Id.* Plaintiff conceded that she would not make comments of that nature during the liability or compensatory phase. Docket No. 251 at 3.

During the hearing, however, defendants abandoned the concerns mentioned (and resolved) above, and instead urged this Court to bar any references to Bertellotti being intoxicated at the time of the accident—again. The Court declined to do so.

In the present motion, defendants urge reconsideration because Bertellotti has already admitted to simple negligence. Thus, they claim, liability is not contested, and the issue of intoxication is relevant only during the punitive damages phase.

As this Court stated when it denied defendants' motions *in limine* as to the misdemeanor DUI charge (Topic II) and consumption of alcohol prior to the accident (Topic III), intoxication is relevant during the liability phase. First, James is also pursuing a gross negligence claim against Bertellotti, and as discussed during the hearing, the consumption of alcohol may be central to whether Bertellotti was grossly negligent on that day. *See* Transcript of Hearing at 26-27. Second, evidence regarding Bertelloti's use of alcohol is relevant to assessing Bertelloti's credibility. Specifically, it goes to "whether or not defendant might be able to recall . . . the circumstances of what occurred on that particular day at that particular time." *Id.* at 22; *see Ballou v. Henri Studios, Inc.*, 656 F.2d 1147, 1155 (5th Cir. 1981) (holding that "[e]vidence of the plaintiff's alcohol and drug use proximately before the accident is relevant to the causation issue, as well as to the plaintiff's ability to accurately recollect the events of the accident."); *see also Abrams v. Marlin Firearms Company*, 838 So. 2d 975, 980 (Miss. 2003) (finding that "[e]vidence of possible alcohol consumption just prior to the accident was highly relevant and probative as to Abrams'[s] credibility, his recollection of the accident since there were no other witnesses, and his contributory negligence.").

4

The motion is, therefore, denied.

C.   **Request to Bar References to Insurance**

Defendants previously requested the Court to bar "references to insurance." Docket No. 227 at 2-3. In James' response, she agreed not to reference insurance during the liability or compensatory damages phase. Docket No. 251 at 2. During the punitive damages phase, however, James stated her intention to introduce the limits of defendants' liability coverage as an "other asset" available to pay a judgment. *Id.* She conceded that she would do so without disclosing that the source of that asset is a liability insurance policy. *Id.* Defendants argue that James' proposal is contrary to Mississippi law.

The Court disagrees. For the reasons that follow, the motion is denied as to the concessions and granted otherwise.

Mississippi's punitive damages statute instructs that the "primary purpose of punitive damages is to punish the wrongdoer and deter similar misconduct in the future by the defendant and others[.]" Miss. Code Ann. § 11-1-65(1)(e). In assessing the amount of punitive damages to award, the fact-finder must consider the "defendant's financial condition *and* net worth . . . *and* any other circumstances shown by the evidence that bear on determining a proper amount of punitive damages." *Id.* (Emphasis added.); *see also* Miss. Model Jury Instructions Civil § 11:13 (2013). As noted by the Mississippi Supreme Court, quoting a trial court's opinion, this section of the statute "refer[s] to the net worth of the defendant as *a* factor to be considered in an effort to determine the defendant's financial ability to pay the award." *Franklin Corp. v. Tedford*, 18 So. 3d 215, 242 (Miss. 2009) (emphasis added); *see also Sandoz, Inc. v. State (In re Miss. Medicaid Pharm. Average Wholesale Price Litig.)*, 190 So. 3d 829, 846 (Miss. 2015); *Canadian Nat. Ry. Co. v. Waltman*, 94 So.3d 1111, 119 (Miss. 2012) ("[The statute] establishes that net worth is

considered—not that it is solely considered—in determining the amount of punitive damages and it is used to calculate the statutory cap for punitive damages.").

The trial court is tasked with scrutinizing any punitive damages award. *See* Miss. Code Ann. § 11-1-65(f). It must ascertain whether the award is "reasonable" and "rationally related to the purpose to punish what occurred giving rise to the award and to deter its repetition by the defendant and others." *Id.* § 11-1-65(f)(i). The trial court must also ensure that the award complies with the statutory cap for punitive damages.

Unlike the fact-finders' considerations, the statutory cap for punitive damages is solely based on net worth, and in this instance, net worth must "be determined in accordance with Generally Accepted Accounting Principles."[1] *Id.* § 11-1-65(b). This limitation on punitive damages "shall not be disclosed to the trier of fact." *Id.* § 11-1-65(3)(c). "In other words, the jury deliberates in the blind relative to the possibility that, under the law, the court may be required to reduce the award dependent on the net worth [as determined in accordance with GAAP] of the defendant." *KLLM Transp. Servs., LLC v. JBS Carriers, Inc.*, No. 3:12-CV-116-HTW-LRA, 2017 U.S. Dist. LEXIS 211371, at *6 (S.D. Miss. Dec. 22, 2017).

The critical inquiry is whether the amount of insurance coverage available to defendants should be disclosed to the fact-finder as part of defendants' "financial condition," "net worth," or "any other circumstance" of relevance. The Court concludes that it should.

Defendants cite to caselaw from around the country to demonstrate that insurance coverage is not a relevant factor to punitive damages. *See, e.g., Michael v. Cole,* 595 P.2d 995 (Ariz. 1979);

---

[1] Generally Accepted Accounting Principles ("GAAP") are defined as "the official standards adopted by the American Institute of Certified Public Accountants (the 'AICPA'), a private professional association, through three successor groups that it established, the Committee on Accounting Procedure, the Accounting Principles Board (the 'APB'), and the Financial Accounting Standards Board (the 'FASB').'" *KLLM Transp. Servs., LLC v. JBS Carriers, Inc.*, No. 3:12-CV-116-HTW-LRA (citing *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 235 F. Supp. 2d 549, 573, n.11 (S.D. Tex. 2002)) (citations omitted).

*City of West Allis v. Wisconsin Electric Power Company,* 635 N.W.2d 873 (Wis. App. 2001); *Baker v. Armstrong,* 744 P.2d 170, 173 (N.M. 1987). These cases, however, are neither persuasive nor binding precedent. Moreover, there is a division of authority among various states on this question, and strong arguments also support the opposing view. *See, e.g.*, *Fleegel v. Boyles*, 61 P.3d 1267, 1271 (Alaska 2002) (citing *Shane v. Rhines*, 672 P.2d 895 (Alaska 1983)) (stating "all five justices of this court, in majority, concurring, and dissenting opinions, agreed that insurance coverage in particular was relevant to a determination of a punitive damages award."); *Wheeler v. Murphy*, 452 S.E.2d 416, 424 (W. Va. 1994) (holding that "[a] defendant's net worth is relevant to the issue of punitive damages, and in this case, where defense counsel offered evidence of Mr. Murphy's meager finances, the plaintiff's rebuttal evidence disclosing the existence and policy limits of Mr. Murphy's liability insurance is not barred"); *Schaefer v. Ready*, 3 P.3d 56, 59 (Idaho Ct. App. 2000) (holding that "[i]f a defendant has indemnity to satisfy a punitive damages award, then he or she should not be permitted to present evidence that paints an unrealistically bleak financial picture for the jury. Such conduct misleads the jury and could unfairly prejudice the verdict."); *Ayers v. Christiansen*, 564 P.2d 458, 461 (Kan. 1977) (finding that "[e]vidence of the defendant's financial condition—of which insurance was a part—was relevant to punitive damages."); *Hall v. Wal-Mart Stores, Inc.*, 959 P.2d 109, 113 n.7 (Utah 1998) (holding that the defendant "should not be permitted to plead poverty where he has an insurance policy which covers an award of punitive damages."); *Mathie v. Fries*, 121 F.3d 808, 816 (2nd Cir. 1997) (holding, as to punitive damages, that "it would be entirely inappropriate for a defendant to raise the issue of his limited financial resources if there existed an indemnity agreement placing the burden of paying the award on someone else's shoulders.").

Still, the task before this Court is to gauge *Mississippi's* position on this issue. To that end, James cites two cases: *Anthony v. Frith*, 394 So. 2d 867 (Miss. 1981) ("*Frith*") and *Old Security*

7

*Casualty Ins. Company v. Clemmer* 455 So. 2d 781 (Miss. 1984) ("*Old Security*"). Neither case squarely supports plaintiff's position. Rather, the cases establish that using insurance coverage to pay an award of punitive damages is not against public policy.

In *Frith*, a post-judgment case, the court held that it was not against any public policy to require State Farm Mutual Automobile Insurance Company to pay the punitive damages assessed against its insured in accordance with the parties' policy. *Old Security* affirmed the holding in *Frith* but clarified that the limits of liability are governed by the language of the policy. While both cases are silent as to what evidence should be presented to a fact-finder, the cases do support James' interpretation of the statute: insurance coverage is indeed a resource available to pay an award of punitive damages under Mississippi law.

The question that remains is whether the jury can know about the policy when deciding on punitive damages. And ultimately, it is *James W. Sessums Timber Co. v. McDaniel*, 635 So. 2d 875 (Miss. 1994) ("*Sessums*"), that answers this question in the affirmative. In *Sessums*, the Mississippi Supreme Court held that despite a failure to raise liability insurance policy during trial or in the appeal briefs, "[u]nder previous pronouncements of this Court, such coverage provides a source from which a punitive damage award may be paid." *Id.* at 883. The court goes on to state, that "proof of net worth of the two defendants was not fully developed . . . however, the net worth of the defendants *combined with the insurance coverage* carried by Sessums . . . supports the jury's award." *Id.* (Emphasis added). The dissent, like defendants, laments the impact to the deterrence goal of punitive damages. But that argument was rejected by the majority and did not prevail.

All in all, the decisions of Mississippi's highest court persuade this Court that the use of "net worth," "financial condition," and "any other circumstances," collectively, envision the fact-finder being presented with robust evidence, including liability insurance, to "determine the defendant's

8

financial ability to pay the award." *Tedford*, 18 So. 3d at 242; *see also Sessums*, 635 So. 2d. at 883-84.[2] To the extent that defendants believe that disclosure of the amount of liability insurance misrepresents Bertelloti's personal finances, they may still limit any award prior to final judgment. To do so, they must merely present evidence of his net worth, in accordance with GAAP, prior to final judgment. This Court is required to follow GAAP's definition of net worth at that juncture and limit any award accordingly. Defendants have indicated that Bertelloti's accountant will come prepared to testify, as is appropriate.

      **SO ORDERED**, this the 27th day of October, 2021.

                                                    s/ Carlton W. Reeves
                                                    UNITED STATES DISTRICT JUDGE

---

[2] A clear reading of the statute supports this conclusion for "[t]he best evidence of legislative intent comes directly from the text of the statute." *Delta Med. Ctr. v. Green*, 43 So.3d 1099, 1103 (Miss. 2010) (citation omitted). And, the Mississippi Supreme Court has admonished courts not to stray away from the clear text of statutes. *See, e.g.*, *Geico Cas. Co. v. Stapleton*, 315 So.3d 464, 465 (Miss. 2021) (overruling its prior decisions and decrying the judicial expansion of Miss. Code § 15-1-35, where those decisions relied on a judicial interpretation of the statute imposed by judges of this this court); *McQuirter v. Archie*, 311 So.3d 1147, 1152 (Miss. 2020) (explaining that the dissent errs in imposing a requirement that cannot be found in the text of the statute); *Chandler v. McKee*, 202 So.3d 1269, 1271 (Miss. 2016) ("Legislative intent is the controlling feature of statutory interpretation, and its key component is the actual text of the statute[.]"). What Justice Gorsuch said in *Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731, 207 L.Ed.2d 218 (2020), is appropriate here: "[N]o court should ever" dispense with a statutory text "to do as we think best," adding "the same judicial humility that requires us to refrain from adding to statutes requires us to refrain from diminishing them." *Id*. at 1753. An interpretation of the statute as defendants argue would diminish Mississippi's statute on punitive damages.